The final case of Martinez v. United States. Ms. Pizarro. Good afternoon. May it please the court, my name is Amelia Pizarro and I represent the petitioners Emanuel Martinez and Timothy Vallejo. This case asks the court to determine the penalty for a legal homicide conviction that has an intentional homicide as the predicate act. Is it, as the government argues, a sentence up to life imprisonment, or is it the same for every other intentional homicide, a mandatory life sentence? Really, the question is whether a person who is convicted of a homicide in fervent of an ongoing criminal enterprise gets a significant benefit not provided to any other defendant who is convicted of an intentional homicide. RICO was created with the specific purpose of imposing enhanced sentences on those engaging in racketeering activities. It was a new tool at the time for the government to combat organized crime. The idea was to establish severe consequences, both financial and in terms of imprisonment, for people who engage in a pattern of racketeering activity as a member of a criminal enterprise. That purpose cannot be achieved if a person who is convicted of a RICO homicide faces zero to life, when every other defendant convicted of an intentional homicide faces mandatory life. Finding that the sentence is mandatory means that Miller v. Alabama applies, and the appellants are entitled to a new sentencing hearing. When it comes to Miller, the parties were in agreement on several points. First, we agree that it applies to mandatory sentences. Second, we agree that it applies to juveniles under the age of 18 at the time the crime was committed, and here, both Martinez and Vallejo were under the age of 18. Third, we agree that it doesn't mean limiting the possibility of a life sentence, but rather requires the court to consider specific factors related to age and its characteristics. Finally, and perhaps most importantly, we agree that it applies retroactively. So this all turns on what the penalty is and whether it's mandatory or not. Well, yes and no. We don't have to accept the government's interpretation or yours that the Miller decision is retroactive. That's certainly a good question for us to answer. We don't accept a confession of error on that score. Right. You don't have to take over for us. Right. So your predicate issue is the interpretation of the statute, but you're going to have to argue the other issue as well. Okay. With Miller being retroactive, I think the government points out in its brief it's sort of a question of whether it's procedural or substantive. Right. And all of the other circuits to address this issue have said it's procedural and therefore not retroactive. Well, that's true, but there's only been, I think, two circuits to address the issue. Right, but you're asking us to create a circuit split. And the case is sitting before the Supreme Court right now. It is sitting before the Supreme Court. It's going to be argued in mid-October. And there, the Solicitor General's office has been giving time and argument and also has given the position that it is retroactive. Right. I inferred that from the fact that the government said that's an error. They usually don't work across purposes in the Justice Department. But the issue is sitting before the Supreme Court on a matter coming from the state Supreme Court, as I understand it. That's true. Right. So the Justice Department will not have a last word. The Supreme Court will. And the issue is a live one as far as our level of the judiciary is concerned. So, again, it's a contestable and contested issue that's going to have to be argued here. But you're right, we don't get to it until we credit your interpretation of the statute. So you led with a discussion of the statutory purpose. And you should really start with the statutory text. Some of you want to start there. Certainly, Your Honor. I think that the text of the statute, and I think we can agree that it's not the clearest written, the sort of parenthetical in the middle there. And we're not arguing that every time a credit connect has a potential life sentence that it transforms into a mandatory one if it's part of a recall. But where the predicate act is intentional homicide, I think the minimum and the maximum are the same. And in that regard, the statute has to be read as whoever violates any provisions of Section 1962. Well, the predicate act is a homicide in this case. It's not just a homicide, but Wisconsin crimes. It may not be one of the federal crimes. That's true. And with the guideline application, the court looks to the equivalent federal crime. And whether it's state or federal, the mandatory minimum sentence is the same as life imprisonment. So the only difference is that in Wisconsin state court, there is the potential for the possibility of parole. And in federal court, there is no such possibility. Right. The statute refers to the maximum penalty, including life imprisonment, not a mandatory life sentence. But I think when it comes to a predicate act that carries the mandatory minimum sentence, those minimums sort of come along. And with intentional homicide, that makes it a mandatory life sentence. Right. But you're reading out the not more than language in the statute if you're reading the parenthetical to stand on its own. I think you're not reading out the not more than. I think homicide makes it different, right? If it were a drug case that carried 10 to life, then the not more than certainly would be there. The sentence would be not more than life. But then you're asking for instructions of the statute that applies differently in different contexts. And that's not usually how we do statutory interpretation. I think that what I'm asking is that life still be the ceiling. And that's the case under this, when the predicate act comes with a potential for life. But I think the idea of a person being sentenced under RICO, where a predicate act also comes with a mandatory minimum, that that minimum would suddenly just disappear because it's part of an ongoing criminal enterprise, that's the problem. Well, a punishment for RICO is not punishment for the underlying act. That can be separately prosecuted, right? Certainly. But I think it incorporates it. The guidelines incorporate it. The way that you look at what is reasonable or the presumptive reasonable of the sentencing range is based on the guidelines. And the guidelines incorporate the underlying predicate act. So a person who commits homicide as part of an ongoing criminal enterprise will be treated differently than a person who commits an arson. And what the guidelines say is start at level 19. But then you look to the underlying predicate act, and you use whatever is higher. And with homicide, it's a level 43. And it's not a range. It's life imprisonment. So the guidelines are discretionary. This is not a guidelines case. It's a statutory case. I think that's sort of the difference. When the guidelines were mandatory, this was not an issue because you looked to a specific range, and it was going to be in line with the mandatory minimum every time. But when the guidelines became advisory, as Your Honor points out, I don't think that that means that suddenly the minimums drop off and that a person who is committing criminal acts as part of an ongoing criminal enterprise suddenly faces less time than it would have if it had been charged separately. Well, it certainly does from the standpoint of the guidelines. I'm not sure I understand. There is no mandatory minimum guideline. Right. Sure. But the guidelines... We're talking about whether the statute is mandatory, right? Yes. And for your reading to hold, we have to read out the not more than language in the statute, or at least read it as inapplicable to the parenthetical. I think... I guess. I guess what I'm saying is that where the minimum is life and the maximum is life, then, yes, you read it out. And the reasonable interpretation is that it shall not be defined into life imprisonment. I think the government held that position, at least when it came to Ms. Martinez's case, when it filed the 5K1 motion and specifically asked for a zero-level reduction in the guideline range, but really from the statutory minimum. Yeah, that was just a mistake. And we don't defer to the Justice Department on that either. Would it be permissible for it to sentence someone to death under Section 90? I think that it's possible for a RICO homicide to carry the death penalty, that the government has to go through some extra steps in order for that penalty to be possible. But yes, I think so. What are the steps? I think under the statute 3591, it requires notice to the defendants. There's a RICO prosecution taking place right now in Milwaukee that's a charged crime, and it had the potential for the death penalty. And the case sort of had to be paused while the government determined whether or not it was going to seek the death penalty. It decided not to. So I do think that death is possible under a RICO prosecution. Okay. I was waiting for another question. Judge Sykes. I think when it comes to... Oh, thank you, Judge Sykes. I would like to reserve my time for about five minutes. May it please the Court. I'm Matt Krieger on behalf of the United States. I'd like to start right where Judge Sykes said we should start, which is with the statutory text. And on this first issue, it's clear that petitioners are not entitled to resentencing under Miller because the statute under which they were sentenced did not mandate life sentences. So I'd encourage the Court to take a look at the text again of 1963a. If you don't have it in front of you, it's at pages 20 and 21 in the government's brief. I'll summarize the beginning, but in essence it says that someone who violates a RICO offense shall be fined under this title or imprisoned not more than 20 years, and then the parenthetical kicks in, or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment. And so it's clear on the basis that when you have a racketeering activity that authorizes up to life, that is the maximum penalty of life, then the parenthetical kicks in. And so you would read it as imprisoned not more than for life if you're in that situation. You're reading out the oar. The oar needs to be there to follow the 20 years and to say what is the following condition. The following condition is if you have this predicate activity up to a maximum, then the maximum goes out to life. I think it's critical to see here that if you were to want to read this as saying imprisoned or for life, as in mandating a life sentence, then you would be in a world in which you would have to mandate a life sentence for every time you had a racketeering activity that authorized up to life. And so our brief discusses drug trafficking or other predicate activities like arson or armed robbery, things that are far short of an intentional murder. And so that is not an interpretation that even petitioners are willing to argue. On the first page of their reply brief, they concede that they do not read this as mandating life in those ways. As your questions elicited, as counsel conceded. But some crimes, including homicide, are mandatory life penalties. There's no minimum, maximum, no range. It's just a mandatory life penalty. And I think the argument is that for those crimes, the not more than language in the statute just doesn't make any sense and should be disregarded. I mean, that's sort of how I read the defendant's argument here. That's how I read it as well, but I see no basis for that in the text of the statute. And our ordinary rules of construction said that you have to follow the text. Yeah, but they also say that where there's an absurdity, we avoid that as well. And so for a crime that carries a mandatory life sentence, no other possibility, no minimum, no maximum, just no range. That's the point. That the not more than language is absurd when you're talking about a mandatory life sentence. So we have a different canon of construction. Okay, I don't think the absurdity canon is what you'd go to next. After text, what are the next things we'd look at? We'd look at legislative history. Here, the legislative history is clear, both in the House and the Senate materials, that what Congress meant to do was to, and here are the words, quote, authorize or permit sentences up to life, nothing suggesting that there's mandated life sentences. You'd look at statutory context. There are neighboring provisions that involve intentional homicide, and they make very clear that they're mandating life or more death. That language is not comparable here. Within the RICO? Yes, I'd point you to section 1959, is a RICO murder offense. And that's critical to statutory context, because 1963a applies in a broad range of offenses. Again, ones that might include arson or armed robbery. And the petitioners here pled guilty not to an intentional murder count. If they did, then they would have known they faced mandatory life. They struck a deal, and they pled guilty to a substantive RICO count of 1962, which is punished under 1963a, and clearly did not mandate life. Government should have charged the RICO murder? They could have. They did not in this case. But that's the point, is that, as you know, convict is often chargeable under any number of offenses that may well cover or carry different penalties. And so it would be completely improper to say that just because a mandatory minimum exists for this conduct somewhere else, that you would import that mandatory minimum into this offense. There's no candid interpretation that would support that. The idea that petitioner's reading is needed to avoid an absurd result I don't think is accurate either. And this case shows why. When you do have intentional murder in a brutal fashion, shooting a good Samaritan as well as other predicate offenses that were attempted murder, then the judge can exercise its discretion and impose a life sentence. So there's no anomaly here. And the idea that there's this need to avoid an absurd result simply is not the case. I wanted to pick up on another point that Judge Sykes made, which is that the underlying racketeering activity to which the petitioners pled guilty was not in federal crimes such as the ones the petitioners have been citing. Instead, it was the Wisconsin first-degree murder statute. And as she just noted in her argument, that allows the sentencing court to give life with parole. And so even under her notion that you would be incorporating the mandatory provisions of the predicate, then you would not be under Miller, because here the predicate was Wisconsin law. It did not mandate life without parole. It was life with parole. Now, again, there's no basis to incorporate this mandatory minimum, but it just shows that her argument is not working. In deciding this case, I've encouraged the court to look squarely at Croft v. Williams. The court decided that case just very recently, and it was very analogous. Croft v. Williams involved an Illinois statute that resulted in a life sentence. And this court denied the Miller argument because the Illinois statute clearly made the life sentence discretionary. And so, therefore, it did not reach the Miller issue. The court can reach that same result here in a very straightforward fashion. More than that, if you would look at the sentencing record here, it's very clear that the district court understood itself without discretion. It went through a very lengthy 3553 analysis. It addressed each petitioner's individual circumstances, not only their age, but also the effect of their age, their immaturity, their family circumstances, the fact that they'd begun using substances at a young age, the fact that they got involved with Latin kings at a young age, and how all these things would result in poor judgment, immaturity. And he nonetheless decided, mainly because of the brutal nature of this crime, to impose a life sentence. And so it was an individualized assessment, which is what Miller calls for, so there's no need to remand in this instance. And again, I point you to Croft v. Williams, because to the extent that in her reply brief she's arguing that there wasn't enough of a consideration of the individualized nature, Croft v. Williams makes clear that you don't have to impose a new Miller sort of review when you have a discretionary statute. You stop once you decide that this was not a mandatory life sentence. That's the end of the inquiry. And so in Croft v. Williams, all that the sentencing court did was say that it had considered the pre-sentence report, which articulated the defendant's age. And that was sufficient. It wasn't necessary for it to then articulate lots and lots of things about the individual defendant. In comparison here, Judge Randa has a very thorough discussion of individualized circumstances, and hence there's no need for resentencing here. So as a government's position, we shouldn't address Miller? That's correct. I don't think there's any need to reach that issue here. That's just how the case was decided in Croft v. Williams. I'd be happy to address questions on the Miller retroactivity issue, but again, I really don't think it's necessary. The court will be hearing argument on that on October 13th, very soon. And you acknowledge that your position in agreement with the defendants asks us to create a circuit split. I think it's true that there are just two other circuits that on the merits have said that it's procedural, so that's correct. There are a number of state high courts that have gone in both directions. Right, but we concern ourselves with creating circuit splits on regional circuits, and so far it's too against your position. So we'd be going in the teeth of decisions from our sister circuits on the retroactivity of Miller. I think that's a fair assessment of the circuits, yes. I don't think there's any need to do that in this court. You could proceed to decide it on the first issue. Alternatively, if you really have heartburn about it, you could wait to see what the Supreme Court decides. I don't think that's necessary. We usually wait for the high court, and usually without heartburn. Why wait? We know better than they do. If there are no other questions, I would ask the court to affirm the judgment below. Judge Randa was grueling on the 2255 motion and knew his mind better than anyone else, understood that he had discretion when he opposed the life sentences. Therefore, there's no need to do this again. Thank you very much. Thank you, Sarah. Thank you, Your Honor. You have two minutes. Thank you. I think the problem is that this is an anomaly. The idea that a homicide as part of the Verdi Code would be zero to life, but if charged as a 1959, then it would be a mandatory life. Those are decisions made by the government, and it would lead to the same facts, the same act, or two very different results. I think that that's one of the problems. I also think that in interpreting the statute, I have to look at context. Context means looking at the other homicide statutes, which carry a minimum of life imprisonment. And finally, as to the sentencing that were held in these cases, I think that another requires more than just an individualized sentencing. It requires consideration of specific facts related to agents' characteristics. And here, the court, I think, didn't do much more than skim the surface. In terms of Mr. Martinez, it noted his dysfunctional family and his age and his family's involvement in the Latin case, but it didn't look at the specific impact that those things might have had on him, the way his family, the way that peer pressure might have influenced him or affected him. It never examined his ability to appreciate consequences and risks, his potential for rehabilitation. And Mr. Blanco's sentence was even, I guess, more surfaced than that. It never mentioned his age or any of the hallmark characteristics of Miller, and it never considered family or peer pressure. And so, for those reasons, I'm asking this court to find that the minimum sentence here was a life imprisonment, that Miller applies retroactively, that these defendants are entitled to new sentencing hearing. Thank you. So, in the world, was this case ever charged in the state court? It was not considered in the state court. They were charged in federal court, and were never charged in state court. There was no murder, and that was never brought to the court? No, sir. All right. Thank you. Thanks to both counsel. Ms. Sorrell, you are acquitted in this case? Yes, sir. You have, again, as the other counsel, additional thanks to the court for so eagerly representing your client. Thank you for your time.